**In the Interest of B.J., a Juvenile.**

No. 06–02–00029–CV.

Court of Appeals of Texas,
Texarkana.

Submitted Oct. 28, 2002.

Decided Jan. 14, 2003.

Robert D. Bennett, Robert D. Bennett & Associates, PC, Gilmer, for appellant.

Angela J. Norton, Asst. Dist. Atty., Gilmer, for appellee.

Before MORRISS, C.J., ROSS and GRANT,* JJ.

MORRISS, Chief Justice.

## OPINION

The trial court granted the State's motion to revoke probation and modify disposition. Consequently, the appellant, B. J., was committed to the Texas Youth Commission. B.J. brings the following points of error: (1) the trial court erred by admitting the audiotape of a 9–1–1 call; (2) the trial court erred by revoking probation for B. J.'s committing an offense against this State; (3) the trial court erred by revoking probation for B.J.'s associating with persons that violate the law or are on probation or parole, whether juvenile or adult; (4) the trial court erred by revoking probation for B.J.'s failing to report to his juvenile probation officer; and (5) the trial

* Ben Z. Grant, Justice, Retired, Sitting by Assignment

court erred by revoking probation for B.J.'s failing to obey school rules and regulations.

On August 13, 2001, the trial court found B.J. engaged in delinquent conduct through burglary of a habitation. *See* TEX. PEN. CODE ANN. § 30.02 (Vernon Supp.2003). As a result, B.J. was placed on probation until he reached the age of eighteen. On January 17, 2002, the State filed a motion to revoke probation and modify disposition, alleging B.J. violated four conditions of his probation. Specifically, the State alleged B. J.: (1) committed an offense against this State by placing a call to 9–1–1 with a bomb threat known to be false and baseless; (2) associated with persons on probation; (3) failed to report to his juvenile probation officer; and (4) failed to obey the rules and regulations of his school. The trial court granted the State's motion and committed B.J. to the Texas Youth Commission.

### The 9–1–1 Call

■ In his first point of error, B.J. contends the trial court erred by admitting a recording of the 9–1–1 call. We review the trial court's decision to admit or exclude evidence under an abuse of discretion standard. *Green v. State,* 934 S.W.2d 92, 101–02 (Tex.Crim.App.1996); *Montgomery v. State,* 810 S.W.2d 372, 379–80 (Tex.Crim. App.1990). A trial court abuses its discretion if its decision "is arbitrary, unreasonable, and without reference to any guiding rules and principles." *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997) (citing *Mercedes–Benz Credit Corp. v. Rhyne,* 925 S.W.2d 664, 666 (Tex.1996)).

■ Texas Rule of Evidence 901 governs the admission of electronic recordings. TEX. R. EVID. 901; *Leos v. State,* 883 S.W.2d 209, 211–12 (Tex.Crim.App. 1994). The rule provides the recording must be authenticated by introducing evidence sufficient to support a finding that the matter in question is what its proponent claims. TEX. R. EVID. 901(a). The rule also gives illustrations of how evidence may be authenticated, but the illustrations were not intended to exclude other methods. TEX. R. EVID. 901(b). For example, the rule provides that telephone conversations can be authenticated by introducing "evidence that a call was made to the number assigned at the time by the telephone company to a particular person or business, if . . . in case of a business, the call was made to a place of business and the conversation related to business reasonably transacted over the telephone." TEX. R. EVID. 901(b)(6).

Despite the language expressly limiting the application of the illustration, B.J. contends the trial court erred by admitting the recording because the State did not authenticate the 9–1–1 call exactly as illustrated in the statute. B. J.'s argument directly contradicts the statute. In order to authenticate the call, the State need merely show the recording is what it claims the recording is, a bomb threat on the 9–1–1 line, placed October 30, 2001, to the Upshur County, Texas, Sheriff's Office from a particular convenience store in or near Gilmer, Texas. The State offered the testimony of Sherry Fennell to authenticate the call. Fennell testified she was the communications supervisor for the Upshur County Sheriff's Office and had been employed there for eleven years. Fennell testified that, on the morning of October 30, 2001, she was working in the sheriff's office when a call came in on the 9–1–1 line at approximately 7:15 a.m. Further, she testified that she answered the call, that the call came from a Texaco convenience store on West Highway 154, and that the caller threatened that Gilmer schools were going to be bombed. Fennell also testified she had listened to the recording that

morning, and it was the same call she received on October 30, 2001.

Based on Fennell's testimony, the court admitted the recording into evidence. There may be a concern, however, that because the State claimed the call was made by B. J., the State must have presented evidence properly identifying B. J.'s voice on the recording before admission. *See* TEX. R. EVID. 901; *Herzing v. Metropolitan Life Ins. Co.*, 907 S.W.2d 574, 580–81 (Tex.App.-Corpus Christi 1995, writ denied). We need not address that concern. Despite the State's failure to present voice identification evidence before admission, B.J. did not object to the lack of voice identification, and the State later produced evidence identifying B. J.'s voice on the recording. *See* TEX. R. APP. P. 33.1. Therefore, the trial court did not abuse its discretion by admitting the recording into evidence. We overrule B. J.'s first point of error.

### Bomb Threat

■■■ In his second point of error, B.J. contends the trial court erred by revoking probation based on the allegation he committed an offense against the laws of this State. In a probation revocation hearing, the trial court is the sole trier of fact and determines the credibility of witnesses and the weight to be given their testimony. *Battle v. State*, 571 S.W.2d 20, 21 (Tex. Crim.App.1978). Appellate courts review an order revoking probation under an abuse of discretion standard. *Cardona v. State*, 665 S.W.2d 492, 493 (Tex.Crim.App. 1984); *Moore v. State*, 11 S.W.3d 495, 498 (Tex.App.-Houston [14th Dist.] 2000, no pet.). In making this determination, we examine the evidence in a light most favorable to the verdict. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex.Crim.App.1981).

In the present case, the State charged B.J. with violating Section 42.06 of the Texas Penal Code, which provides in relevant part:

(a) [a] person commits an offense if he knowingly initiates, communicates or circulates a report of a present, past, or future bombing, fire, offense, or other emergency that he knows is false or baseless and that would ordinarily: (1) cause action by an official or volunteer agency organized to deal with emergencies . . . .

TEX. PEN. CODE ANN. § 42.06 (Vernon 1999).

B.J. contends the State failed to properly identify the voice on the 9–1–1 recording as his. Again, Texas Rule of Evidence 901 controls voice identification. TEX. R. EVID. 901. By way of illustration, the rule states that voice identification is satisfied by anyone who, after hearing the recording, can identify the voice as the same heard by them any time under circumstances connecting it with the alleged speaker. TEX. R. EVID. 901(b)(5).

In order to meet its burden, the State elicited testimony from Milton Wiley, B. J.'s probation officer. Wiley testified he was ninety-five percent certain the last voice on the recording was B. J.'s. Wiley also testified he was familiar with the way B.J. talks, that he had spoken with him on numerous occasions, and that he had heard the same voice inflections in B. J.'s voice as those heard in the recording. When viewing the evidence in a light most favorable to the verdict, a reasonable trier of fact could have made the determination that B. J.'s voice was on the recording. *See Garrett*, 619 S.W.2d at 174. Accordingly, the trial court did not abuse its discretion by finding B.J. guilty of violating Section 42.06 of the Texas Penal Code. We overrule B. J.'s second point of error.

### Association

■■■ In his third point of error, B.J. contends the trial court erred by revoking

his probation based on the allegation he associated with persons who violate the law or are on probation, parole, or community supervision, whether juvenile or adult. For a child found to have engaged in delinquent conduct, the trial court may modify a disposition if the child violates a reasonable and lawful court order. TEX. FAM. CODE ANN. § 54.05(f) (Vernon 2002). In order to find error in the trial court's decision, the record must show the court abused its discretion in finding, by a preponderance of the evidence, a violation of a condition of probation. *In re M.A.L.*, 995 S.W.2d 322, 324 (Tex.App.-Waco 1999, no pet.).

In *Scroggins v. State*, 815 S.W.2d 898, 899 (Tex.App.-Fort Worth 1991, pet. ref'd), the trial court revoked Scroggins' community supervision. Scroggins was found to have violated a condition of his community supervision, requiring him to avoid persons of disreputable or harmful character. *Id.* Specifically, Scroggins was arrested along with Kevin Barnes for car theft. *Id.* at 900. The court held Scroggins knew Barnes was a person of disreputable character by the fact they were codefendants. *Id.* Further, there was testimony Scroggins told his community supervision officer he was not associating with Barnes, which indicated Scroggins was aware of Barnes' disreputable character, and his community supervision officer specifically told Scroggins to refrain from associating with Barnes. *Id.* Therefore, because Scroggins was aware Barnes was a person of disreputable and harmful character, the court held Scroggins violated a condition of his community supervision by continuing to associate with him. *Id.*

In the present case, the State produced a videotape taken from the Texaco convenience store on West Highway 154 from which the 9-1-1 call was placed, depicting B. J., his brother, and a third individual

entering and leaving the store. Wiley identified the third individual on the videotape as Michael Jones. Wiley also testified that, at the time the videotape was recorded, Jones was on juvenile probation. Further, the State introduced written statements from both Jones and B. J.'s brother stating they had all three been together that morning. However, unlike *Scroggins*, the State failed to produce evidence that B.J. was aware of Jones' probationary status. *See id.* at 899. There was no evidence B.J. and Jones acted together in placing the 9-1-1 call. The court in *Scroggins* held he violated the condition because an element of knowledge was satisfied. *Id.* at 900. However, in the present case, there is nothing in the record indicating that B.J. was aware that Jones was on probation. Therefore, while the condition itself is certainly reasonable, the trial court abused its discretion by holding B.J. in violation.

### Failure to Report

■ In his fourth point of error, B.J. contends the trial court abused its discretion by revoking probation based on B. J.'s failure to report to his probation officer. As a condition of his probation, B.J. was required to report to his probation officer in person on Wednesday after school every two weeks and by telephone twice a week, or as directed by the trial court. Wiley testified that, "to the best of [his] knowledge," B.J. failed to report in person for the following weeks: (1) August 19, 2001; (2) August 26, 2001; (3) September 2, 2001; (4) September 23, 2001; (5) September 30, 2001; (6) October 7, 2001; (7) October 14, 2001; (8) October 21, 2001; (9) October 28, 2001; (10) November 4, 2001; (11) November 18, 2001; and (12) November 25, 2001. Wiley also testified that, "to the best of [his] knowledge," B.J. failed to report by telephone for the following weeks: (1) August 19, 2001; (2) August 26,

2001; (3) September 2, 2001; (4) September 9, 2001; (5) September 16, 2001; (6) September 23, 2001; (7) September 30, 2001; (8) October 7, 2001; (9) October 14, 2001; (10) October 21, 2001; (11) October 28, 2001; (12) November 4, 2001; (13) November 11, 2001; and (14) November 25, 2001.

B.J. contends that, because Wiley qualified his testimony with "to the best of my knowledge," the State failed to show B.J. violated this probationary condition by a preponderance of the evidence. However, the trier of fact is the sole judge of the witness' credibility and the weight to be given to his or her testimony. *Battle,* 571 S.W.2d at 21. When viewing the evidence in a light most favorable to the verdict, a reasonable trier of fact could have found B.J. guilty of violating this condition of his probation. *See Garrett,* 619 S.W.2d at 174. Accordingly, the trial court did not abuse its discretion. We overrule B. J.'s fourth point of error.

### School Rules

■ In his fifth point of error, B.J. contends the trial court erred by revoking his probation based on his failure to obey school rules and regulations. Specifically, B.J. contends the trial court improperly admitted disciplinary reports over hearsay objections. Whether evidence is admissible as an exception to the hearsay rule is for the trial court to decide, reviewable under an abuse of discretion standard. *Nat'l Liab. & Fire Ins. Co. v. Allen,* 15 S.W.3d 525, 527–28 (Tex.2000).

The State produced evidence B.J. had been subject to discipline for disobeying school rules and regulations on October 2, 2001, and November 1, 2001. Kathy Musik, assistant principal at Gilmer Junior High School, testified that on each occasion the teachers submitted detention referrals, giving their descriptions of B. J.'s behavior. While offering the referrals into evidence, the following exchange took place:

[State]: The documents you are relying on, are those documents kept in the regular course of business there at the Gilmer school?

[Musik]: Yes, I have two copies and both the copies were made from B. J.'s discipline folder.

[State]: Are the entries made on the documents you are referring to, relying on, and testifying about made with persons with actual knowledge of the events?

[Musik]: Yes.

[State]: Is it the regular practice of business to keep those memorandums and those records you are relying on?

[Musik]: Yes sir, that is the regular practice and procedure.

[State]: Those been altered or changed to your knowledge in any way, form, or fashion?

[Musik]: No, sir.

[State]: And are you indeed a custodian of those particular records?

[Musik]: Yes, I am.

[State]: Are you familiar with the manner and method in which they are kept?

[Musik]: Yes.

[State]: Are they kept with an effort to make sure they are trustworthy and accurate?

[Musik]: Yes, sir.

Based on the foregoing, the trial court overruled B. J.'s hearsay objection and admitted the records. According to Texas Rule of Evidence 803, a business record is admissible as an exception to the hearsay rule if it was recorded at or near the time of the event, by someone with personal knowledge, if kept in the course of a regularly conducted business activity, and if it

was a regular business practice to keep the records. TEX. R. EVID. 803(6).

■ B.J. contends the evidence was inadmissible because the State did not ask if the referrals were recorded at or near the time of the event. It has been held that, to lay a proper predicate for a document's admission under the business records exception, the proponent must establish the record was made at or near the time of the event being recorded. TEX. R. EVID. 803(6); *Philpot v. State*, 897 S.W.2d 848, 851–52 (Tex.App.-Dallas 1995, pet. ref'd). The record contains no evidence that the referrals were made at or near the time of the punishable offense. Therefore, the State did not lay the proper predicate, and the documents should not have been admitted under the *business records* exception. *See Philpot*, 897 S.W.2d at 851–52.

■ The school records, however, were properly admitted. When the trial court's ruling on the admission of evidence is correct, though for a wrong or insufficient reason, it will not result in a reversal if the evidence is admissible for any reason. *Spann v. State*, 448 S.W.2d 128, 130 (Tex.Crim.App.1969); *Salas v. State*, 629 S.W.2d 796, 799 (Tex.App.-Houston [14th Dist.] 1981, no pet.). Under Texas Rule of Evidence 803(8), reports, of any form, from a public office or agency, are admissible if they set forth matters observed pursuant to duty imposed by law as to which matters there was a duty to report. TEX. R. EVID. 803(8)(B). It has been well settled that teachers have a duty imposed by law to monitor the behavior of children under their supervision. *See* TEX. EDUC. CODE ANN. § 22.051 (Vernon 1996); *Downing v. Brown*, 935 S.W.2d 112, 113–

14 (Tex.1996); *Williams v. Chatman*, 17 S.W.3d 694, 700 (Tex.App.-Amarillo 1999, pet. denied). Further, "a teacher with knowledge that a student has violated the student code of conduct shall file with the school principal or other appropriate administrator a written report, not to exceed one page, documenting the violation." TEX. EDUC. CODE ANN. § 37.001(b) (Vernon Supp.2003).

In the present case, the teachers, who are employees of a public agency,[1] had a duty imposed by law to supervise the children and report any violations of the student code of conduct. *See* TEX. EDUC. CODE ANN. § 37.001(b); *Downing*, 935 S.W.2d at 113–14. While B.J. was under their supervision, he violated the student code of conduct,[2] and the teachers, pursuant to their duty imposed by law, observed and reported these violations. Accordingly, because the disciplinary referrals set forth matters observed pursuant to a duty imposed by law, the referrals were admissible under the public records exception. TEX. R. EVID. 803(8).

### Conclusion

Despite erroneously finding B.J. violated a condition of his probation by knowingly associating with persons that violate the law or are on probation, parole, or community supervision, whether juvenile or adult, the trial court was justified in modifying B.J.'s disposition given the other three conditions that were properly found to have been violated. *See Moore v. State*, 605 S.W.2d 924, 926 (Tex.Crim.App.1980) (one sufficient ground for revocation will support the court's order to revoke).

---

1. *See Fibreboard Corp. v. Pool*, 813 S.W.2d 658, 676 (Tex.App.-Texarkana 1991, writ denied) (public records exception applicable only when exhibit is prepared by public officials or *employees* under their supervision in performance of their official duties).

2. Musik testified B. J.'s behavior constituted a violation of school rules and regulations.

For the reasons stated, we affirm the judgment.