In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00197-CR
______________________________


AMBER CARREON, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 5th Judicial District Court
Bowie County, Texas
Trial Court No. 01-F0150-005


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Justice Ross


MEMORANDUM OPINION

          Amber Carreon appeals the trial court's judgment revoking her community
supervision and sentencing her to two years' confinement in a state jail facility. In her first
issue on appeal, Carreon contends the evidence is insufficient to support the trial court's
finding that she violated her community supervision. Next, she asks us to find that her
punishment is disproportionate to the gravity of her violation of the community supervision
agreement. We affirm the judgment.
Procedural Background
          On July 8, 2002, Carreon pled guilty to delivering methamphetamine in the amount
of less than one gram. See Tex. Health & Safety Code Ann. § 481.112(a) (Vernon 2003). 
That offense is a state jail felony. Tex. Health & Safety Code Ann. § 481.112(b) (Vernon
2003). Pursuant to a plea agreement, the trial court found the evidence substantiated
Carreon's guilt, but deferred a finding of guilt and placed her on community supervision for
a period of five years. 
          Several months later, Carreon admitted violating her conditions of community
supervision. In response, the trial court adjudicated Carreon's guilt April 11, 2003, and
sentenced her to a term of imprisonment. The trial court, however, suspended imposition
of that sentence for a period of five years and continued her on community supervision with
the condition that she spend thirty days in jail (with credit for time she had served pending
the adjudication hearing). 
          On May 7, 2003, the State filed a motion to have Carreon's community supervision
revoked because she had allegedly failed to report to her supervision officer on four
occasions. After an August 21 hearing, the trial court found Carreon had violated the
conditions of her community supervision, revoked her community supervision, and
sentenced her to two years' confinement in a state jail facility. 
Evidentiary Sufficiency
          In her first point of error, Carreon contends the evidence is legally insufficient to
support the trial court's finding that she violated the terms of her community supervision. 
"At a hearing on an application to revoke [community supervision], guilt or innocence is not
at issue, and the trial court need not determine the defendant's original criminal culpability,
only whether the [defendant] broke the contract made with the trial court to receive
[community supervision]." Pierce v. State, 113 S.W.3d 431, 436 (Tex. App.—Texarkana
2003, pet. ref'd). Revocation is proper if the evidence is sufficient to support the trial
court's finding that the defendant violated the terms of the community supervision
agreement with the trial court. Chacon v. State, 558 S.W.2d 874, 876 (Tex. Crim. App.
1977); Pierce, 113 S.W.3d at 436–37.
          We review a trial court's decision to revoke community supervision under an abuse
of discretion standard and examine the evidence in the light most favorable to the trial
court's order. Pierce, 113 S.W.3d at 436. A trial court does not abuse its discretion to
revoke a defendant's community supervision if the State presents sufficient evidence that
the defendant violated at least one term of the community supervision agreement as
alleged in the State's motion to revoke. Id. "If the greater weight of credible evidence
creates a reasonable belief a defendant has violated a condition of his or her [community
supervision], the trial court's order of revocation did not abuse its discretion and must be
upheld." Id. (citing Scamardo v. State, 517 S.W.2d 293, 298 (Tex. Crim. App. 1974)). The
trial court is the sole judge of credibility of the witnesses and the weight to be given to
witness testimony. In re B.J., 100 S.W.3d 448, 453 (Tex. App.—Texarkana 2003, no pet.). 
          In this case, the trial court found Carreon had not reported to her supervision officer
April 4, 10, 15, and 25, 2003, as required by the terms of her community supervision. 
Carreon testified at the hearing she did not report April 4 because she thought she was told
she did not have to report until Monday, April 7. Carreon also told the trial court she did
not report April 10 and 15 because she was ill. According to Carreon's testimony, she did
not report April 25 because she was bonding a friend out of jail, but she had attempted
several times on that date to call and inform her supervision officer of the reason she would
not be reporting on that date. 
          Jerry Funderburk, the Bowie County supervision officer who supervised Carreon's
community supervision, testified that on several occasions he instructed Carreon to report
every day to Bowie County's "Day Reporting Center." According to Funderburk, however,
Carreon failed to report April 10 and April 25. Carreon provided a doctor's excuse for not
reporting on the 10th. On the 25th, however, Carreon went to bail a friend out of jail
instead of reporting. 
          Viewing the evidence in the light most favorable to the trial court's verdict, the great
weight of credible evidence shows Carreon failed to report to her supervision officer
April 25, 2003, as alleged in the State's motion to revoke. Her supervision officer testified
she failed to report to the community supervision department April 25. Carreon admitted
she did not report to Bowie County's Day Reporting Center April 25, 2003. And, in
hindsight, Carreon acknowledged she exercised poor judgment in deciding to miss the
appointment with her supervision officer to instead go bail a friend out of jail. Therefore,
we cannot say the trial court abused its discretion by finding Carreon had violated the
conditions of her community supervision agreement on at least one occasion. We overrule
Carreon's first point of error.
Disproportionate Sentence
          In her second point of error, Carreon contends the trial court's sentence constitutes
a disproportionate punishment, considering the minor nature in which she violated her
community supervision agreement. Carreon was convicted of a state jail felony offense,
the punishment range for which is not less than 180 days nor more than two years'
confinement in a state jail facility. See Tex. Pen. Code Ann. § 12.35(a) (Vernon 2003). 
The trial court sentenced Carreon to two years' confinement. 
          Traditionally, as long as the punishment assessed is within the range prescribed by
the Legislature in a valid statute, Texas appellate courts have held that a defendant's
punishment is not excessive, cruel, or unusual. See, e.g., Jordan v. State, 495 S.W.2d
949, 952 (Tex. Crim. App. 1973). But in Jackson v. State, 989 S.W.2d 842, 845 (Tex.
App.—Texarkana 1999, no pet.), we recognized that a prohibition against grossly
disproportionate punishment survives under the Eighth Amendment to the United States
Constitution apart from any consideration of whether the punishment assessed is within
the range established by the Legislature. See also Fluellen v. State, 71 S.W.3d 870, 873
(Tex. App.—Texarkana 2002, pet. ref'd); Latham v. State, 20 S.W.3d 63, 68–69 (Tex.
App.—Texarkana 2000, pet. ref'd).
Our proportionality analysis under both the Eighth Amendment to the
United States Constitution and Article I, Section 13 of the Texas Constitution
is guided by (1) the gravity of the offense and the harshness of the penalty;
(2) the sentences imposed on other criminals in the same jurisdiction; and
(3) the sentences imposed for commission of the same crime in other
jurisdictions.

Alberto v. State, 100 S.W.3d 528, 530 (Tex. App.—Texarkana 2003, no pet.) (referencing
Solem v. Helm, 463 U.S. 277, 292 (1983); and Simmons v. State, 944 S.W.2d 11, 15 (Tex.
App.—Tyler 1996, pet. ref'd)). If we first find that the trial court imposed a sentence that
is grossly disproportionate to the offense, then (and only then) will we consider the
remaining factors of the Solem test and compare the sentence received to either
sentences for similar crimes in the same jurisdiction or to sentences for the same crime in
other jurisdictions. McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir. 1992); see also Davis
v. State, 905 S.W.2d 655, 664–65 (Tex. App.—Texarkana 1995, pet. ref'd).
          In the case now before us, Carreon did not present this issue to the trial court. As
such, she did not preserve this issue for our review. See Tex. R. App. P. 33.1(a); Alberto,
100 S.W.3d at 529. Moreover, even had Carreon preserved this issue for our review, the
record contains no evidence for us to use in comparing the sentence imposed with
sentences of other persons in Texas or in other jurisdictions who committed a similar
offense yet violated their community supervision in allegedly minor ways. See Alberto, 100
S.W.3d at 530.
Conclusion
          For the reasons stated, we affirm the trial court's judgment.
 

                                                                           Donald R. Ross
                                                                           Justice


Date Submitted:      May 19, 2004
Date Decided:         May 25, 2004

Do Not Publish





y v. City
of Tyler, 836 S.W.2d 337, 341 (Tex. App.—Tyler 1992, writ denied) (cause of action for
temporary injury to land accrues on each actionable injury). The right to sue for the injury
is a personal right belonging to the person owning the property at the time of the injury. 
Abbott v. City of Princeton, 721 S.W.2d 872, 875 (Tex. App.—Dallas 1986, writ ref'd n.r.e.);
Lay v. Aetna Ins. Co., 599 S.W.2d 684, 686 (Tex. Civ. App.—Austin 1980, writ ref'd n.r.e.). 
Therefore, without express provision, the right does not pass to a subsequent purchaser
of the property. Abbott, 721 S.W.2d at 875; Lay, 599 S.W.2d at 686. A mere subsequent
purchaser cannot recover for an injury committed before his or her purchase. Lay, 599
S.W.2d at 686.
          Citgo relies on Senn v. Texaco, Inc., 55 S.W.3d 222 (Tex. App.—Eastland 2001,
pet. denied), and Exxon Corp. v. Pluff, 94 S.W.3d 22 (Tex. App.—Tyler 2002, pet. denied). 
Both the Senn and Pluff cases are very similar to the case at hand, and both held that the
cause of action for injuries to property belongs to the owner of the property at the time of
the alleged injuries and that subsequent purchasers lack standing to sue, absent an
express provision in the deed granting them that power.  
          In Senn, 55 S.W.3d at 224, several oil and gas producers operated on property
known as the "Covered 'S' Ranch" and allegedly caused permanent and temporary injuries
to the ranch by contaminating the aquifer underlying the land. The Senns purchased the
property in 1997, but all drilling and production activities of the defendant producers had
ceased before the Senns' purchase. Id. at 224-25. The defendant producers relied on the
well-established rule in Texas that:
Where injury to land results from a thing that the law regards as a
permanent nuisance, the right of action for all the damages resulting from the
injury accrues to the owner of the land at the time the thing that causes the
injury commences to affect the land.

Senn, 55 S.W.3d at 225 (quoting Vann v. Bowie Sewerage Co., 127 Tex. 97, 90 S.W.2d
561, 562 (1936)). Based on this long-standing principle, the court found the Senns lacked
standing to bring suit for any type of injury to the land that occurred before their purchase. 
Senn, 55 S.W.3d at 226. The court noted that, while the rule in Vann may seem harsh as
applied to the Senns, the Senns could have avoided its application by bargaining for an
assignment of the prior owner's possible causes of action for injuries to the land that
occurred before the purchase, or insisted that the grantor sellers give them warranties
about the condition of the land in the deed. Id. In addition, the Senns could have
performed a better inspection of the land, where it was apparent from the lack of warranties
about the condition of the land and the long-standing production of oil and gas from the
land, that such an inspection was needed. Id.  
          In Pluff, 94 S.W.3d at 26, a landowner sued Exxon based on the oil company's
failure to remove all of the oilfield materials used in drilling and operation of oil wells on his
property. Exxon's drilling and production activities on the property ceased before Pluff's
purchase of the land in 1992, and all of the oilfield materials were on the property on the
date of Pluff's purchase. Id. at 27. The Tyler Court of Appeals found that standing is a
threshold issue, and the proper inquiry is whether the plaintiff has a "cause of action, which
involves the combination of a right on the part of the plaintiff and a violation of such right
by defendant." Id. at 28 (quoting Nobles, 533 S.W.2d at 927). The court found the
subsequent landowner had no cause of action, and therefore lacked standing, because
they showed no injury that occurred during their ownership of the land. Pluff, 94 S.W.3d
at 28. In summarizing the Senn holding, the Pluff court found that, "in determining
standing, the characterization of the injury [is] not important; it [is] the fact of injury that [is]
critical." Id. The court concluded the undisputed evidence "showed a continuing condition
that already existed on the date of purchase," and "[w]ithout a new injury that occurred
after they purchased the property or an assignment of a cause of action for the prior injury,
the [plaintiff] had not been aggrieved and therefore had no standing." Id.
          In this case, it is uncontroverted that Citgo sold the Donaldson Lateral pipeline to
EOTT before the Denmans purchased the property and that, since the sale, Citgo has not
conducted any operations on the Denman property. Citgo provided the affidavit testimony
of Clyde Stone, a Citgo Petroleum Corporation employee, who stated that, on January 27,
1997, Citgo sold the Donaldson Lateral pipeline to EOTT Energy Pipeline and that, since
the date of that sale, "Citgo Pipeline Company has not conducted any other operations on
the property . . . ." Rule 166a(c) of the Rules of Civil Procedure states that a summary
judgment may be based on "uncontroverted testimonial evidence of an interested witness
. . . if the evidence is clear, positive and direct, otherwise credible and free from
contradictions and inconsistencies, and could have been readily controverted." Tex. R.
Civ. P. 166a(c).
Ongoing Operations 
          The Denmans did not controvert that Citgo sold the Donaldson Lateral pipeline to
EOTT before their purchase of the land, but instead contend Citgo owned a second
pipeline on the right-of-way in question and therefore have ongoing operations on the
property. Rule 166a(c) of the Rules of Civil Procedure provides that "[e]xcept on leave of
court, the adverse party, not later than seven days prior to the day of hearing may file and
serve opposing affidavits or other written response." Tex. R. Civ. P. 166a(c). As the rule
makes clear, the court has discretion to accept late-filed evidence. Beavers v. Goose
Creek Consol. Ind. Sch. Dist., 884 S.W.2d 932, 935 (Tex. App.—Waco 1994, writ denied). 
In the Denmans' timely response to the motion for summary judgment, they produced
pictures purported by affidavit to be a "pipeline above land surface on Denman property"
and Citgo signs warning of a pipeline. The trial court granted Citgo's motion for summary
judgment March 22, 2002. The Denmans filed a motion for reconsideration of the order
granting Citgo's motion for summary judgment June 21, 2002, and included several more
photographs purported by affidavit to be "depicting the CITGO/EOTT Right of Way, a
surface pipeline wrapped with asbestos and/or the surface pipeline in close proximity or
crossing the four inch Donaldson Lateral pipeline." There is no indication in the record
before us the trial court considered the late-filed affidavit attached to the motion for
reconsideration. The court expressly denied the motion for reconsideration. Therefore,
the affidavit and photographs allegedly depicting a second pipeline on the right-of-way in
question is not summary judgment evidence and we will not consider it. The affidavit
testimony and photographs attached to the original response to the motion for summary
judgment do not establish ongoing operations by Citgo or the ownership of a second
pipeline on the right-of-way. The photographs allegedly show a "pipeline above land
surface on Denman property." They do not purport to depict a second pipeline on the right-of-way in question, and in light of the numerous other oil and gas rights-of-way and
pipelines on the Denman property, there is no reasonable inference the photographs are
of a second pipeline on the right-of-way. In their original response to the motion for
summary judgment, the Denmans also produced pictures of Citgo signs on the property,
warning of petroleum pipelines. The presence of Citgo signs, which were subsequently
changed to EOTT signs, does not address whether Citgo continued to own a second
pipeline, or whether it was continuing to operate on the property. 
          Citgo produced summary judgment evidence it sold the Donaldson Lateral pipeline
and ceased all operations on the property before the Denmans purchased it. The
Denmans produced no evidence to controvert that. We conclude that Senn and Pluff are
controlling and that, like the landowners in those cases, the Denmans lack standing to sue
because any injury to their property occurred before they purchased it and their deed
contains no assignment of any cause of action. 
Temporary or Permanent Injury
          The Denmans attempt to distinguish Senn and Pluff by asserting that the injury to
their property is temporary in nature and that their cause of action accrues anew each day
the action is not desisted. While it is questionable whether the injuries they allege are
temporary,


 this argument was directly rejected in Senn. The Eastland Court of Appeals
regarded the distinction between temporary and permanent injuries as meaningless with
respect to the issue of standing. Senn, 55 S.W.3d at 226. The court found that "[a]ny
injury to the land that the defendants might have caused, whether temporary or permanent,
occurred prior to the Senns' purchase of the land," and the Senns, therefore, did not own
any causes of action for either type of injury that may have been caused by the
defendants. Id. The court in Pluff, 94 S.W.3d at 28, as discussed above, analyzed the
distinction between permanent and temporary injuries and also determined that the
characterization of the injury is not important to the inquiry on standing.
Statutory Violations         
          The Denmans also contend Citgo violated Railroad Commission regulations and the
Texas Litter Abatement Act, and that such statutory violations provide them standing to
bring suit. The Denmans did not allege any causes of action for violation of any Railroad
Commission regulations, and such violations therefore cannot provide them standing to
sue. 
          The Denmans alleged violations of the Texas Litter Abatement Act only in their
second amended petition, filed after the trial court granted Citgo's motion for summary
judgment. Rule 166a, Texas Rules of Civil Procedure, provides that a summary judgment
shall be rendered on the "pleadings . . . on file at the time of the hearing, or filed thereafter
and before judgment with permission of the court, . . . ." Tex. R. Civ. P. 166a(c); see also
Automaker, Inc. v. C.C.R.T. Co., 976 S.W.2d 744, 745 (Tex. App.—Houston [1st Dist.]
1998, no pet.); Taylor v. Sunbelt Mgmt., Inc., 905 S.W.2d 743, 745 (Tex. App.—Houston
[14th Dist.] 1995, no writ). Nonmovants must secure the court's permission to file an
amended pleading after the hearing. Tex. R. Civ. P. 166a(c); see also Automaker, Inc., 976
S.W.2d at 745. A trial court cannot grant a motion to amend the pleadings once the court
renders judgment. Automaker, Inc., 976 S.W.2d at 746. Here, the Denmans filed their
second amended petition after the trial court granted Citgo's motion for summary judgment. 
The alleged violations of the Texas Litter Abatement Act, therefore, were not on file at the
time of the summary judgment hearing and were not filed thereafter "before judgment with
permission of the court." We will not consider them. 
          We affirm the judgment. 


                                                                          Donald R. Ross
                                                                           Justice

Date Submitted:      November 12, 2003
Date Decided:         December 8, 2003