TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-05-00845-CR






Christopher James Fresch, Appellant


v.


The State of Texas, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT

NO. D-1-DC-05-202621, HONORABLE DON B. MORGAN, JUDGE PRESIDING





M E M O R A N D U M O P I N I O N


 A jury found Christopher James Fresch guilty of delivery of a controlled substance
in an amount less than one gram, and the trial court sentenced him to five years in prison. See
Tex. Health & Safety Code Ann. § 481.112(a) (West 2003). In two issues, Fresch contends that the
evidence is factually insufficient to support his conviction and that the trial court erred in admitting
an audiotape of the undercover sting operation into evidence. We affirm.

 On the evening of May 27, 2005, Austin Police Department Officers Rory Sullivan,
James Harrell, and Kenneth Black were working a "narcotics and prostitution buy bust" operation
in east Austin. Officer Sullivan was working undercover in an unmarked truck posing as a member
of the local drug culture looking to buy drugs. He was wearing a concealed microphone referred to
as a "wire." Officer Harrell was following Officer Sullivan in another vehicle listening to the
transmissions from Sullivan's wire. Officer Black was in yet another vehicle as part of the
"takedown" unit. At approximately 11:00 p.m., Officer Sullivan made contact with Dwayne Easley
in the vicinity of Springdale Road and Sara Road. According to Sullivan, "I told [Easley] I was
'looking,' which means I'm looking for crack cocaine, street terminology." Easley got into the
passenger seat of Sullivan's truck and directed him to a house at 1603 E. M. Franklin.

 When Sullivan and Easley arrived at the house, Sullivan noticed two men, later
identified as Richard Mizell and Fresch, in the yard. Sullivan testified that Easley identified Fresch
as the person from whom they could buy cocaine as follows:


 [The State]: Okay. And did he [Easley] indicate to anyone regarding these
drugs?

 

 [Sullivan]: Yeah. The initial thing he [Easley] said--I said, is it the
white guy [Mizell]? He [Easley] said no. It's the black guy
[Fresch]. And while we were out in the car, I was trying--I
told him [Easley], well, have the guy come bring it to the car.



Sullivan testified that Easley called out to Mizell that Sullivan was looking to buy $30 worth of
crack. At this point, Mizell walked over to Fresch, who got into the driver's seat of a car parked in
the driveway of the house. Sullivan testified that Mizell extended his right hand to Fresch and a
"hand exchange" occurred between the two men. Although Sullivan could not see what changed
hands, Mizell immediately walked back to Sullivan's truck, extended his right hand, and handed
Sullivan two rocks of crack cocaine in exchange for $30. After completing the transaction, Sullivan
gave "the bust signal." Officer Black and the takedown unit responded and arrested Mizell and
Fresch. No drugs or money were found on Fresch or in the car.

 On June 22, 2005, Fresch was indicted for knowingly delivering, by actual or
constructive transfer, less than one gram of cocaine. See Tex. Health & Safety Code Ann.
§ 481.112(a). The indictment alleged two prior convictions for possession of a controlled substance.
The case proceeded to trial before a jury on December 6, 2005. The State presented four witnesses
and two exhibits, including an audiotape recording of the undercover drug transaction. Fresch did
not testify. During sentencing, the State presented evidence that Fresch had two prior convictions
for possession of a controlled substance. The trial court sentenced Fresch to five years in prison.

 In his first issue on appeal, Fresch contends that the evidence is factually insufficient
to support the verdict convicting him of delivery of a controlled substance. In a factual sufficiency
review, we view the evidence in a neutral light and ask whether a jury was rationally justified in
finding guilt beyond a reasonable doubt. See Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim.
App. 2006). We then determine whether the evidence supporting the verdict is so weak that the
verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and
preponderance of the conflicting evidence. Id. at 415. We will not reverse a case on a factual
sufficiency challenge unless we can say, with some objective basis in the record, that the great
weight and preponderance of the evidence contradicts the jury's verdict. Id. at 417.

 A person commits the offense of delivery of a controlled substance if he knowingly
delivers or possesses with intent to deliver a controlled substance. Tex. Health & Safety Code Ann.
§ 481.112(a). Delivery can be accomplished in three ways: actual transfer, constructive transfer,
or offer to sell. Id. § 481.002(8) (West Supp. 2006). The jury charge in this case listed all three
methods of delivery. On appeal, the State argues the evidence is factually sufficient to support the
verdict under a theory of constructive transfer. Constructive transfer can occur in at least two ways: 
(1) by entrusting the substance to an intermediary or (2) by placing the substance in a particular
location and then informing the intended recipient of such location. Sims v. State, 117 S.W.3d 267,
268-69 (Tex. Crim. App. 2003). Prior to a constructive transfer, the defendant must have direct or
indirect control of the transferred substance. Rasmussen v. State, 608 S.W.2d 205, 210
(Tex. Crim. App. 1980).

 Fresch argues that the evidence is factually insufficient to support the verdict because
no drugs or money were found on him or in the car. However, Officer Sullivan testified that Easley
identified Fresch as the person from whom they could buy cocaine and that Mizell returned to
Sullivan's truck with two rocks of crack cocaine after making a "hand exchange" with Fresch. There
is no evidence that Mizell handed the $30 to Fresch before Sullivan gave the signal for the bust. 
Additionally, testimony was offered at trial that drug dealers often do not carry drugs or money on
their person because police searches are routine and dealers do not want to be caught with drugs on
them. The fact that no drugs or money were found on Fresch or in the car does not render the
evidence supporting the verdict factually insufficient. 

 Fresch also contends that the evidence is factually insufficient to support the verdict
because Officer Sullivan testified that he was unable to see what was transferred between Fresch and
Mizell. However, this testimony does not render the evidence factually insufficient. Officer Sullivan
also testified that Mizell walked empty handed from Sullivan's truck to the car in which Fresch sat,
made a "hand exhange" with Fresch, returned to Sullivan's truck with his hand extended, and gave
Sullivan two rocks of crack cocaine. According to Sullivan, he never lost visual contact with Mizell
during the transaction. There is no evidence in the record that Fresch handed something to Mizell
other than cocaine or that Mizell somehow substituted cocaine for the item Fresch gave him before
reaching Sullivan's truck. (1) Viewing the record in a neutral light, we cannot say that the great weight
and preponderance of the evidence contradicts the jury's verdict. A jury rationally could have found,
beyond a reasonable doubt, that Fresch had direct or indirect control of the cocaine before
constructively transferring it to Sullivan through Mizell as an intermediary.

 In his second issue, Fresch contends that the trial court erred when it admitted into
evidence the audiotape of the undercover drug transaction recorded by Officers Sullivan and Harrell. 
We have reviewed the record, including the audiotape. The audiotape contains Sullivan's
conversation with Easley regarding "looking" for crack cocaine, Easley's giving directions to
Sullivan on how to get to the house where they could purchase crack cocaine, Easley's identification
of Fresch as the person from whom they could purchase crack cocaine, Easley's communication to
Mizell indicating that Sullivan wanted to purchase $30 of crack, and Sullivan's identifying himself
as police to Easley after giving the signal for the bust. Fresch's voice was not recorded
on the audiotape.

 At trial, Officer Harrell testified that he recorded the audiotape with his "kel unit"
during the undercover sting operation that occurred on the evening of May 27, 2005. He verified the
chain of custody of the audiotape and confirmed that the audiotape had not been altered. Officer
Harrell testified that he could identify the voices on the audiotape, but did not specifically identify
the voices on the tape for the jury. On voir dire examination outside the presence of the jury, defense
counsel asked Officer Harrell questions about the circumstances surrounding the making of the tape. 
Officer Harrell testified that he did not speak with any of the suspects prior to making the recording,
but that he did speak with "a couple of them" after making the recording. He stated that he could
not remember whether he spoke with Fresch, but that Fresch's voice was not recorded on the
audiotape. Defense counsel then made the following objection:

 Judge, we'll object, first, to the authenticity of the tape. More
importantly, though, if Mr. Fresch's voice is not on this tape, I don't
think the proper predicate has been laid to introduce as hearsay from
these other individuals that are out there that are going to come in. I
don't think the proper predicate has been laid and I believe this is
hearsay because we haven't reached that--if there's any--if there is
a co-conspirator exception here, I don't think they've even come
close to linking this up at this point.

 


The trial court overruled the objection and the audiotape was admitted.

 On appeal, Fresch reasserts his objection to the admissibility of the audiotape on the
bases that it was not properly authenticated and that the proper predicate was not laid for the
introduction of the hearsay statements pursuant to any exception to the rule.

 Texas Rule of Evidence 901 governs the admission of electronic recordings. Tex. R.
Evid. 901; Leos v. State, 883 S.W.2d 209, 211-12 (Tex. Crim. App. 1994). Rule 901 provides, "The
requirement of authentication or identification as a condition precedent to admissibility is satisfied
by evidence sufficient to support a finding that the matter in question is what its proponent claims." 
Tex. R. Evid. 901. Subsection (b) of rule 901 provides forms of acceptable authentication that will
comply with the rule. For example, testimony by a witness with knowledge that the matter is what
it is claimed to be is an acceptable method of authentication. Tex. R. Evid. 901(b)(1). Rule 901
does not require the State to prove anything--it requires only a showing that satisfies the trial court
that the matter in question is what the State claims. Garner v. State, 939 S.W.2d 802, 805
(Tex. App.--Fort Worth 1997, pet. ref'd).

 We conclude that Officer Harrell's testimony explaining how the audiotape was made
and confirming that it was an audiotape of what occurred during the undercover sting operation
satisfied the requirements of rule 901. Although Fresch argues on appeal that the audiotape was not
properly authenticated because Officer Harrell did not identify the voices on the audiotape for the
jury, he did not object to the lack of voice identification at trial. (2) Furthermore, Officer Sullivan later
identified the voices on the audiotape for the jury without comment or objection by Fresch. See In
the Interest of B.J., 100 S.W.3d 448, 451 (Tex. App.--Texarkana 2003, no pet.) ("Despite the State's
failure to present voice identification evidence before admission [of an audiotape], [appellant] did
not object to the lack of voice identification, and the State later produced evidence identifying
[appellant's] voice on the recording. Therefore, the trial court did not abuse its discretion by
admitting the recording into evidence.").

 Lastly, Fresch objected that the State did not lay the proper predicate for the
admission of hearsay statements on the audiotape pursuant to any exception to the rule barring
hearsay. However, Fresch did not identify to the trial court which statements on the audiotape
constituted hearsay or explain how the predicate was deficient. An objection to an improper
predicate that fails to inform the trial court exactly how the predicate is deficient will not preserve
error. Bird v. State, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985). Thus, we conclude that Fresch did
not adequately preserve this issue for review. Moreover, Fresch's briefing with respect to this issue
includes a single statement on this point: "the tape did contain many hearsay statements, not
admissible under any exception." Thus, he also has not adequately briefed this issue for appellate
review. See Tex. R. App. P. 38.1(h). (3)

 We are of the view that the audiotape admitted into evidence in this case likely
contained some hearsay statements. However, even assuming Fresch had preserved this issue for
appellate review and assuming the admission of certain statements on the audiotape was error, any
error was harmless because Officer Sullivan testified extensively both on direct examination and on
redirect examination regarding the details of the drug transaction, including the content of the
conversations recorded on the audiotape, the statements made, and the identity of the individuals
making the statements, without objection. See Marshall v. State, 210 S.W.3d 618, 631 (Tex. Crim.
App. 2006) (citing Leday v. State, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[o]verruling an
objection to evidence will not result in reversal when other such evidence was received without
objection, either before or after the complained-of ruling.").

 Affirmed.


 __________________________________________

 G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed: August 6, 2007

Do Not Publish
1. See, e.g., Noil v. State, No. 14-05-00100-CR, 2006 Tex. App. LEXIS 288, at *7
(Tex. App.--Houston [14th Dist.] Jan. 12, 2006, pet. ref'd) (mem. op.) (evidence factually sufficient
where defendant gave woman an item, woman put it in her mouth and spit it out upon returning to
undercover officer's vehicle, item turned out to be cocaine, and there was no evidence defendant
gave her anything other than cocaine or that she substituted cocaine for another item); Johnson
v. State, Nos. 14-03-00419-CR & 14-03-00420-CR, 2004 Tex. App. LEXIS 1972, at *6
(Tex. App.--Houston [14th Dist.] Mar. 2, 2004, pet. ref'd) (mem. op.) (rational jury could have
found appellant had direct control of cocaine where appellant made hand-to-hand exchange with
intermediary and intermediary did not put his hands in his pockets between time of exchange and
handing cocaine to undercover officer).
2. Texas Rule of Evidence 905(b)(5) provides that evidence can be authenticated by
"[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission
or recording, by opinion based upon hearing the voice at anytime under circumstances connecting
it with the alleged speaker." Tex. R. Evid. 905(b)(5).
3. The State defends the admission of the statements on the audiotape by arguing that the
statements are not hearsay because they were not offered for the truth of the matter asserted. The
State does not argue that they are admissible pursuant to any exception.