# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00845-CR

**Christopher James Fresch, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
### NO. D-1-DC-05-202621, HONORABLE DON B. MORGAN, JUDGE PRESIDING

### M E M O R A N D U M   O P I N I O N

A jury found Christopher James Fresch guilty of delivery of a controlled substance in an amount less than one gram, and the trial court sentenced him to five years in prison. *See* Tex. Health & Safety Code Ann. § 481.112(a) (West 2003). In two issues, Fresch contends that the evidence is factually insufficient to support his conviction and that the trial court erred in admitting an audiotape of the undercover sting operation into evidence. We affirm.

On the evening of May 27, 2005, Austin Police Department Officers Rory Sullivan, James Harrell, and Kenneth Black were working a "narcotics and prostitution buy bust" operation in east Austin. Officer Sullivan was working undercover in an unmarked truck posing as a member of the local drug culture looking to buy drugs. He was wearing a concealed microphone referred to as a "wire." Officer Harrell was following Officer Sullivan in another vehicle listening to the transmissions from Sullivan's wire. Officer Black was in yet another vehicle as part of the

"takedown" unit. At approximately 11:00 p.m., Officer Sullivan made contact with Dwayne Easley in the vicinity of Springdale Road and Sara Road. According to Sullivan, "I told [Easley] I was 'looking,' which means I'm looking for crack cocaine, street terminology." Easley got into the passenger seat of Sullivan's truck and directed him to a house at 1603 E. M. Franklin.

When Sullivan and Easley arrived at the house, Sullivan noticed two men, later identified as Richard Mizell and Fresch, in the yard. Sullivan testified that Easley identified Fresch as the person from whom they could buy cocaine as follows:

| [The State]: | Okay. And did he [Easley] indicate to anyone regarding these drugs? |
|---|---|
| [Sullivan]: | Yeah. The initial thing he [Easley] said—I said, is it the white guy [Mizell]? He [Easley] said no. It's the black guy [Fresch]. And while we were out in the car, I was trying—I told him [Easley], well, have the guy come bring it to the car. |

Sullivan testified that Easley called out to Mizell that Sullivan was looking to buy $30 worth of crack. At this point, Mizell walked over to Fresch, who got into the driver's seat of a car parked in the driveway of the house. Sullivan testified that Mizell extended his right hand to Fresch and a "hand exchange" occurred between the two men. Although Sullivan could not see what changed hands, Mizell immediately walked back to Sullivan's truck, extended his right hand, and handed Sullivan two rocks of crack cocaine in exchange for $30. After completing the transaction, Sullivan gave "the bust signal." Officer Black and the takedown unit responded and arrested Mizell and Fresch. No drugs or money were found on Fresch or in the car.

On June 22, 2005, Fresch was indicted for knowingly delivering, by actual or constructive transfer, less than one gram of cocaine. *See* Tex. Health & Safety Code Ann. § 481.112(a). The indictment alleged two prior convictions for possession of a controlled substance. The case proceeded to trial before a jury on December 6, 2005. The State presented four witnesses and two exhibits, including an audiotape recording of the undercover drug transaction. Fresch did not testify. During sentencing, the State presented evidence that Fresch had two prior convictions for possession of a controlled substance. The trial court sentenced Fresch to five years in prison.

In his first issue on appeal, Fresch contends that the evidence is factually insufficient to support the verdict convicting him of delivery of a controlled substance. In a factual sufficiency review, we view the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 415. We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. at 417.

A person commits the offense of delivery of a controlled substance if he knowingly delivers or possesses with intent to deliver a controlled substance. Tex. Health & Safety Code Ann. § 481.112(a). Delivery can be accomplished in three ways: actual transfer, constructive transfer, or offer to sell. *Id*. § 481.002(8) (West Supp. 2006). The jury charge in this case listed all three methods of delivery. On appeal, the State argues the evidence is factually sufficient to support the

3

verdict under a theory of constructive transfer. Constructive transfer can occur in at least two ways: (1) by entrusting the substance to an intermediary or (2) by placing the substance in a particular location and then informing the intended recipient of such location. *Sims v. State*, 117 S.W.3d 267, 268-69 (Tex. Crim. App. 2003). Prior to a constructive transfer, the defendant must have direct or indirect control of the transferred substance. *Rasmussen v. State*, 608 S.W.2d 205, 210 (Tex. Crim. App. 1980).

Fresch argues that the evidence is factually insufficient to support the verdict because no drugs or money were found on him or in the car. However, Officer Sullivan testified that Easley identified Fresch as the person from whom they could buy cocaine and that Mizell returned to Sullivan's truck with two rocks of crack cocaine after making a "hand exchange" with Fresch. There is no evidence that Mizell handed the $30 to Fresch before Sullivan gave the signal for the bust. Additionally, testimony was offered at trial that drug dealers often do not carry drugs or money on their person because police searches are routine and dealers do not want to be caught with drugs on them. The fact that no drugs or money were found on Fresch or in the car does not render the evidence supporting the verdict factually insufficient.

Fresch also contends that the evidence is factually insufficient to support the verdict because Officer Sullivan testified that he was unable to see what was transferred between Fresch and Mizell. However, this testimony does not render the evidence factually insufficient. Officer Sullivan also testified that Mizell walked empty handed from Sullivan's truck to the car in which Fresch sat, made a "hand exhange" with Fresch, returned to Sullivan's truck with his hand extended, and gave Sullivan two rocks of crack cocaine. According to Sullivan, he never lost visual contact with Mizell

4

during the transaction. There is no evidence in the record that Fresch handed something to Mizell other than cocaine or that Mizell somehow substituted cocaine for the item Fresch gave him before reaching Sullivan's truck.[1] Viewing the record in a neutral light, we cannot say that the great weight and preponderance of the evidence contradicts the jury's verdict. A jury rationally could have found, beyond a reasonable doubt, that Fresch had direct or indirect control of the cocaine before constructively transferring it to Sullivan through Mizell as an intermediary.

In his second issue, Fresch contends that the trial court erred when it admitted into evidence the audiotape of the undercover drug transaction recorded by Officers Sullivan and Harrell. We have reviewed the record, including the audiotape. The audiotape contains Sullivan's conversation with Easley regarding "looking" for crack cocaine, Easley's giving directions to Sullivan on how to get to the house where they could purchase crack cocaine, Easley's identification of Fresch as the person from whom they could purchase crack cocaine, Easley's communication to Mizell indicating that Sullivan wanted to purchase $30 of crack, and Sullivan's identifying himself as police to Easley after giving the signal for the bust. Fresch's voice was not recorded on the audiotape.

---

[1] *See*, *e.g.*, *Noil v. State*, No. 14-05-00100-CR, 2006 Tex. App. LEXIS 288, at *7 (Tex. App.—Houston [14th Dist.] Jan. 12, 2006, pet. ref'd) (mem. op.) (evidence factually sufficient where defendant gave woman an item, woman put it in her mouth and spit it out upon returning to undercover officer's vehicle, item turned out to be cocaine, and there was no evidence defendant gave her anything other than cocaine or that she substituted cocaine for another item); *Johnson v. State*, Nos. 14-03-00419-CR & 14-03-00420-CR, 2004 Tex. App. LEXIS 1972, at *6 (Tex. App.—Houston [14th Dist.] Mar. 2, 2004, pet. ref'd) (mem. op.) (rational jury could have found appellant had direct control of cocaine where appellant made hand-to-hand exchange with intermediary and intermediary did not put his hands in his pockets between time of exchange and handing cocaine to undercover officer).

At trial, Officer Harrell testified that he recorded the audiotape with his "kel unit" during the undercover sting operation that occurred on the evening of May 27, 2005. He verified the chain of custody of the audiotape and confirmed that the audiotape had not been altered. Officer Harrell testified that he could identify the voices on the audiotape, but did not specifically identify the voices on the tape for the jury. On voir dire examination outside the presence of the jury, defense counsel asked Officer Harrell questions about the circumstances surrounding the making of the tape. Officer Harrell testified that he did not speak with any of the suspects prior to making the recording, but that he did speak with "a couple of them" after making the recording. He stated that he could not remember whether he spoke with Fresch, but that Fresch's voice was not recorded on the audiotape. Defense counsel then made the following objection:

> Judge, we'll object, first, to the authenticity of the tape. More importantly, though, if Mr. Fresch's voice is not on this tape, I don't think the proper predicate has been laid to introduce as hearsay from these other individuals that are out there that are going to come in. I don't think the proper predicate has been laid and I believe this is hearsay because we haven't reached that—if there's any—if there is a co-conspirator exception here, I don't think they've even come close to linking this up at this point.

The trial court overruled the objection and the audiotape was admitted.

On appeal, Fresch reasserts his objection to the admissibility of the audiotape on the bases that it was not properly authenticated and that the proper predicate was not laid for the introduction of the hearsay statements pursuant to any exception to the rule.

Texas Rule of Evidence 901 governs the admission of electronic recordings. Tex. R. Evid. 901; *Leos v. State*, 883 S.W.2d 209, 211-12 (Tex. Crim. App. 1994). Rule 901 provides, "The

6

requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Tex. R. Evid. 901. Subsection (b) of rule 901 provides forms of acceptable authentication that will comply with the rule. For example, testimony by a witness with knowledge that the matter is what it is claimed to be is an acceptable method of authentication. Tex. R. Evid. 901(b)(1). Rule 901 does not require the State to prove anything—it requires only a showing that satisfies the trial court that the matter in question is what the State claims. *Garner v. State*, 939 S.W.2d 802, 805 (Tex. App.—Fort Worth 1997, pet. ref'd).

We conclude that Officer Harrell's testimony explaining how the audiotape was made and confirming that it was an audiotape of what occurred during the undercover sting operation satisfied the requirements of rule 901. Although Fresch argues on appeal that the audiotape was not properly authenticated because Officer Harrell did not identify the voices on the audiotape for the jury, he did not object to the lack of voice identification at trial.[2] Furthermore, Officer Sullivan later identified the voices on the audiotape for the jury without comment or objection by Fresch. *See In the Interest of B.J.*, 100 S.W.3d 448, 451 (Tex. App.—Texarkana 2003, no pet.) ("Despite the State's failure to present voice identification evidence before admission [of an audiotape], [appellant] did not object to the lack of voice identification, and the State later produced evidence identifying

---

[2] Texas Rule of Evidence 905(b)(5) provides that evidence can be authenticated by "[i]dentification of a voice, whether heard firsthand or through mechanical or electronic transmission or recording, by opinion based upon hearing the voice at anytime under circumstances connecting it with the alleged speaker." Tex. R. Evid. 905(b)(5).

7

[appellant's] voice on the recording. Therefore, the trial court did not abuse its discretion by admitting the recording into evidence.").

Lastly, Fresch objected that the State did not lay the proper predicate for the admission of hearsay statements on the audiotape pursuant to any exception to the rule barring hearsay. However, Fresch did not identify to the trial court which statements on the audiotape constituted hearsay or explain how the predicate was deficient. An objection to an improper predicate that fails to inform the trial court exactly how the predicate is deficient will not preserve error. *Bird v. State*, 692 S.W.2d 65, 70 (Tex. Crim. App. 1985). Thus, we conclude that Fresch did not adequately preserve this issue for review. Moreover, Fresch's briefing with respect to this issue includes a single statement on this point: "the tape did contain many hearsay statements, not admissible under any exception." Thus, he also has not adequately briefed this issue for appellate review. *See* Tex. R. App. P. 38.1(h).[3]

We are of the view that the audiotape admitted into evidence in this case likely contained some hearsay statements. However, even assuming Fresch had preserved this issue for appellate review and assuming the admission of certain statements on the audiotape was error, any error was harmless because Officer Sullivan testified extensively both on direct examination and on redirect examination regarding the details of the drug transaction, including the content of the conversations recorded on the audiotape, the statements made, and the identity of the individuals making the statements, without objection. *See Marshall v. State*, 210 S.W.3d 618, 631 (Tex. Crim.

---

[3] The State defends the admission of the statements on the audiotape by arguing that the statements are not hearsay because they were not offered for the truth of the matter asserted. The State does not argue that they are admissible pursuant to any exception.

App. 2006) (citing *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[o]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling.").

Affirmed.

_____

G. Alan Waldrop, Justice

Before Justices Patterson, Pemberton and Waldrop

Affirmed

Filed:  August 6, 2007

Do Not Publish